UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
:
:
In re Royal Group Technologies      :    04 Civ. 9809 (HB)
Securities Litigation               :
                                    :    **OPINION & ORDER**
                                    :
------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

Lead plaintiffs John Moretto ("Moretto") and the Canadian Commercial Workers Industry Pension Plan ("CCWIPP") (collectively, "plaintiffs") bring this putative class action against Royal Group Technologies Limited ("Royal Group" or "the Company"), Vic De Zen ("De Zen"), Douglas Dunsmuir ("Dunsmuir"), Gary Brown ("Brown"), Ron Goegan ("Goegan") and Domenic D'Amico ("D'Amico") (collectively, the "Individual Defendants") for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants have moved to dismiss the consolidated amended complaint on the grounds that: 1) this Court lacks subject matter jurisdiction over plaintiffs' claims; 2) the doctrine of *forum non conveniens* favors dismissal; 3) this Court lacks personal jurisdiction over the Individual Defendants; 4) plaintiffs fail to state a claim for relief under the Exchange Act; and 5) certain of plaintiffs' claims are barred by the statute of limitations. Also before the Court is Lewis R. Messinger's ("Messinger's") motion to intervene as an additional class representative. For the reasons set forth below, defendants' motion to dismiss is GRANTED.

## BACKGROUND

Royal Group is a Canadian corporation engaged in the manufacture of construction products. (Compl. ¶ 16).[1] Royal Group's headquarters are located in Ontario, Canada and its shares are traded on both the New York Stock Exchange ("NYSE") and on the Toronto Stock Exchange. (Compl. ¶¶ 16-17). De Zen co-founded Royal Group, and served as chairman of its board from 1994 until November 2004. (Compl. ¶ 18). Dunsmuir and Brown were directors of the Company, and its CEO and

---

[1] Citations to "Compl." refer to the Consolidated Amended Class Action Complaint dated May 5, 2005.

1

CFO, respectively. (Compl. ¶¶ 19-20). Goegan was CFO beginning in December, 2001. (Compl. ¶ 21). D'Amico, a co-founder of Royal Group, was employed by the Company, and owned a significant number of shares in Royal Group's stock. (Compl. ¶ 22).

CCWIPP is one of Canada's largest multi-employer pension plans. (Compl. ¶ 15 n.1). Both CCWIPP and Moretto purchased shares of Royal Group on the Toronto Stock Exchange. (Def.'s Mem. at 2). Proposed intervenor Messinger is a U.S. citizen who purchased shares of Royal Group on the NYSE. (Affidavit of Lewis R. Messinger, dated July 29, 2005 ("Messinger Aff.") ¶¶ 1,4 ). Plaintiffs allege that the Individual Defendants "caus[ed] the Company to engage in financial transactions either with themselves or with companies under their control" and that they failed to disclose these related-party transactions to shareholders as required by SEC regulations. (Compl. ¶¶ 2, 35-6). Plaintiffs allege that, when these transactions came to light in 2004 through investigations initiated by Canadian authorities, Royal Group's stock price declined significantly. (Compl. ¶¶ 3-6).

## DISCUSSION

Defendants move to dismiss the complaint on, *inter alia*, grounds of *forum non conveniens*. As a general matter, courts must defer to a plaintiff's choice of forum. See Iragorri v. United Technologies Corp., 274 F.3d 65, 70 (2d Cir. 2001). "'[U]nless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Id. quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). However, the degree of deference accorded plaintiff's choice varies based upon the circumstances of the case. Thus, in deciding whether the doctrine of *forum non conveniens* requires dismissal, courts must first determine the degree of deference due to plaintiff's choice of forum. See Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). Having made this determination, a court must next decide "whether an adequate alternative forum exists." Id. If there exists an alternative forum, the court should then balance the "private and public interest" factors set forth by the Supreme Court in Gilbert to determine, based on "the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." Id. citing Gilbert, 330 U.S. at 507-09. A

2

decision to dismiss a matter "on *forum nonn conveniens* grounds lies wholly within the broad discretion of the district court." Iragorri, 274 F.3d at 72.

"[T]he choice of a United States forum by a foreign plaintiff is entitled to less deference" than that accorded a domestic plaintiff suing in his or her home district. Id. at 71. Here, lead plaintiffs Moretto and CCWIPP are Canadian citizens.[2] "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." Id. at 72. The converse is also true. The named plaintiffs' lack of bona fide connections to this district indicates that their choice of forum should be accorded less deference than that due a resident plaintiff seeking redress. See Pollux, 329 F.3d at 71 ("when a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient").

Next, I must consider whether an adequate alternative forum exists. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux, 329 F.3d at 75. Here, all of the defendants are Canadian. (See Def.'s Mem. at 10). In addition, the Second Circuit has concluded that Ontario, Canada is an adequate forum to try class actions based on violations of federal securities laws. See DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 57-60 (2d Cir. 2000) ("DiRienzo I"), vacated on other grounds by, DiRienzo v. Philip Servs. Corp., 294 F.3d 21 (2d Cir. 2002) ("DiRienzo II"). Indeed, plaintiffs have presented no argument as to why the Canadian courts are not an adequate forum to try this action. (See Pl.'s Mem. at 15).[3]

Since an adequate alternative forum exists, this Court must balance the relevant private and public interest factors. The private interest factors include: "1) the ease of access to evidence; 2) the availability of compulsory process for the attendance of

---

[2] Although Moretto's citizenship is not averred in the Complaint, plaintiffs do not dispute defendants' assertion that he is Canadian. While proposed plaintiff-intervenor Messinger is a U.S. citizen, he does not reside in this district. (See Messinger Aff. ¶¶ 1-2 (stating that Messinger is a resident of Pennsylvania who is currently on active duty with the U.S. Army and is stationed in Germany)).

[3] At oral argument, plaintiffs asserted that Canada imposes "all different kinds of legal and procedural requirements" on securities class actions, and that such suits are relatively "new" in Canada. (11/8/05 Tr. at 28). However, plaintiffs have not cited any specific provision of Canadian law that would impede plaintiffs from pursuing this action in Canada.

unwilling witnesses; 3) the cost of the willing witnesses' attendance . . . [and] all other factors that might make the trial quicker or less expensive." DiRienzio II, 294 F.3d at 29.

Here, defendants correctly assert that the vast majority of documents and witnesses relevant to plaintiffs' claims are located in Canada. (See Declaration of Scott D. Bates, dated July 15, 2005 ("Bates Dec.") ¶ 3). Plaintiffs do not dispute defendants' assertion, but rather argue that relevant documents could easily be transported here and that willing witnesses could travel between Ontario and the Southern District of New York without undue hardship. Plaintiffs are correct that documents and witnesses can be transported, nonetheless, the location of documents and witnesses weighs in favor of a Canadian forum. More importantly, any non-party witnesses with knowledge of the underlying transactions at issue in this litigation, of which there are several, are located outside this Court's subpoena power. While plaintiffs are correct that depositions can be taken abroad pursuant to letters rogatory, see DiRienzo II, 294 F.3d at 30, "[l]ive testimony is especially important in a fraud action where the factfinder's evaluation of witnesses' credibility is central to the resolution of the issues." Id. At trial, a jury in this District would be deprived of the live testimony of, *inter alia*, Royal Group's auditors as well as the independent directors and forensic accountants involved in the investigation of the alleged fraud (assuming those witnesses proved unwilling to testify voluntarily). (See Compl. ¶¶ 68, 81, 84).

The public interest factors to be considered include: "1) administrative difficulties associated with court congestion; 2) the unfairness of imposing jury duty on a community with no relation to the litigation; 3) the local interest in having localized controversies decided at home; and 4) avoiding difficult problems in conflict of laws and the application of foreign law." DiRienzo II, 294 F.3d at 31. Here, "Ontario['s] courts, like the Southern District of New York, suffer from congestion." Id. In addition. while the United States has an interest in addressing allegations of fraud against corporations listed on the NYSE, Canada has an interest in addressing allegations of fraud against its domestic corporations and its individual citizens. Unlike DiRienzo, in which plaintiffs' complaint alleged that the vast majority of defendants' shares were traded on American stock exchanges, see DiRienzo II, 294 F.3d at 31, here less than 12% of Royal Group's shares traded on an American exchange during the class period. (See Declaration of

4

Marc D. Ashley, dated August 23, 2005 ("Ashley Dec.") ¶ 2). Put another way, the local interest in trying this action here is weaker than that identified in DiRienzo. Finally, while a Canadian court may have to apply U.S. law to claims based on purchases of Royal Group's shares by U.S. citizens on the NYSE, "an American court would likely apply Canadian law to claims by non-resident class members based on the purchase of securities outside the United States." DiRienzo II, 294 F.3d at 31.[4]

Ultimately, while the public interest factors are largely neutral, the private interest factors clearly weigh in favor of a Canadian forum. This action will hinge in large part on the testimony and evidence of non-party witnesses, including Royal Group's auditors, the banks involved in the underlying transactions, and the independent directors and outside consultants who investigated the alleged fraud. None of these entities or individuals may be compelled to testify in this Court. When weighed against the non-resident plaintiffs' diminished interest in litigating in this forum, dismissal is warranted.[5]

## CONCLUSION

For the foregoing reasons, defendants motion to dismiss is GRANTED and this action is DISMISSED without prejudice. The Clerk of the Court is directed to close this motion and to remove this lawsuit from my docket.

**SO ORDERED.**
**November 21, 2005**
**New York, New York**

_____
U.S.D.J.

---

[4] Plaintiffs' proposed class includes all persons who purchased Royal Group stock during the relevant time period, and is not limited to those who purchased on the NYSE. (Compl. ¶ 29).
[5] This case is distinguishable from DiRienzo, in which the Second Circuit reversed a dismissal for *forum non conveniens*. In DiRienzo, some of the named plaintiffs resided in the Southern District of New York. DiRienzo II, 294 F.3d at 28. Furthermore, prior to moving to dismiss for *forum non*, defendants in DiRienzo petitioned the Judicial Panel on Multidistrict Litigation to transfer several parallel actions to the Southern District of New York. Id. at 29. Therefore, the DiRienzo court questioned defendants' claim that litigating in New York would be inconvenient. Id. Finally, in DiRienzo, "most plaintiffs conducted their stock transactions in the United States[,]" id. at 28, whereas here less than 12% of Royal Group's shares traded in the U.S.

5